UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILDERNESS SOCIETY, et al.,      .
                                 .
          Plaintiffs,            .
                                 .
     v.                          .  CA No. 17-2587 (TSC)
                                 .
DONALD J. TRUMP, et al.,         .
                                 .
          Defendants.            .
. . . . . . . . . . . . . . . .  .
                                 .
HOPI TRIBE, et al.,              .
                                 .
          Plaintiffs,            .  CA No. 17-2590 (TSC)
                                 .
     v.                          .
                                 .
DONALD J. TRUMP, et al.,         .  Washington, D.C.
                                 .  Wednesday, January 31, 2018
          Defendants.            .  11:06 a.m.
. . . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


APPEARANCES

For Plaintiffs:

Wilderness Society, et al.      HEIDI J. MCINTOSH, ESQ.
CA No. 17-2587                  Earthjustice
                                633 17th Street
                                Suite 1600
                                Denver, CO 80202
                                (303) 996-9621

Hopi Tribe, et al.              NATALIE A. LANDRETH, ESQ.
CA No. 17-2590                  Native American Rights Fund
                                745 W. 4th Avenue
                                Suite 502
                                Anchorage, AK 99501
                                (907) 276-0680

```
Grand Staircase Escalante        GARY S. GUZY, ESQ.
Partners, et al.                 Covington & Burling, LLP
CA No. 17-2591                   850 10th Street, NW
                                 Washington, DC 20001
                                 (202) 662-5978


Utah Dine Bikeyah, et al.        JAMES T. BANKS, ESQ.
CA No. 17-2605                    Hogan Lovells, LLP
                                 555 13th Street, NW
                                 Washington, DC 20004
                                 (202) 637-5600


Natural Resources Defense        IAN FEIN, ESQ.
Council, Inc., et al.            Natural Resources Defense Council
CA No. 17-2606                   111 Sutter Street
                                 21st Floor
                                 San Francisco, CA 94104
                                 (415) 875-6100

                                 SHARON BUCCINO, ESQ.
                                 Natural Resources Defense Council
                                 1152 15th Street, NW
                                 Suite 300
                                 Washington, DC 20005
                                 (202) 289-2397


For Defendants:                  ROMNEY S. PHILPOTT, ESQ.
                                 U.S. Department of Justice
                                 Environment and Natural Resources
                                 999 18th Street
                                 Suite 370 - South Terrace
                                 Denver, CO 80202
                                 (303) 844-1810

                                 JUDITH E. COLEMAN, ESQ.
                                 U.S. Department of Justice
                                 Environment and Natural Resources
                                 601 D Street, NW
                                 Washington, DC 20004
                                 (202) 514-3553


Court Reporter:                  BRYAN A. WAYNE, RPR, CRR
                                 U.S. Courthouse, Room 4704-A
                                 333 Constitution Avenue, NW
                                 Washington, DC 20001
                                 (202) 354-3186



Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.
```

<pre>
 1                   P R O C E E D I N G S

 2          THE DEPUTY CLERK:  Your Honor, this morning we

 3     have five separate civil action numbers:

 4          Civil Action No. 17-2587, the Wilderness Society, et al.,

 5     versus Donald J. Trump, et al.

 6          Civil Action No. 17-2590, Hopi Tribe, et al., versus

 7     Donald J. Trump, et al.

 8          Civil Action No. 17-2591, Grand Staircase Escalante

 9     Partners, et al., verus Donald J. Trump, et al.

10          Civil Action No. 17-2605, Utah Dine Bikeyah versus

11     Donald J. Trump, et al.

12          Civil Action 17-2606, Natural Resources Defense Council,

13     Inc., et al, versus Donald J. Trump, et al.

14          May I have counsel for the parties please approach the

15     lectern, identify yourself for the record, and name the party

16     or parties and the case or cases you represent.  Thank you.

17          MS. LANDRETH:  Good morning, Your Honor.  My name is

18     Natalie Landreth.  I'm senior staff attorney at Native American

19     Rights Fund.  At NARF we represent the Hopi, Zuni, and Ute

20     Mountain Ute tribes.  This morning I will be speaking on behalf

21     of the Hopi, Zuni, Mountain Ute, Navajo Nation, and the Ute

22     Indian Tribe for the convenience of the Court.

23          THE COURT:  And your last name is Landreth?

24          MS. LANDRETH:  That's correct.  Natalie Landreth.

25          THE COURT:  All right.  Thank you.
</pre>

 1          MS. LANDRETH:  Oh, I'm sorry.  You asked which case.

 2   17-CV-2590, Hopi Tribe versus Trump.  Thank you.

 3          THE COURT:  Thank you.

 4          MR. BANKS:  Good morning, Your Honor.  My name is

 5   James Banks with the firm of Hogan Lovells.  We represent the

 6   Utah Dine Bikeyah group of plaintiffs.

 7          THE COURT:  Okay, Mr. Banks.  Good morning.

 8          MS. MCINTOSH:  Good morning, Your Honor.  My name is

 9   Heidi McIntosh with Earthjustice, and I'm here to speak this

10   morning on behalf of all of the plaintiffs in the Wilderness

11   Society versus Trump and Natural Resources Defense Council

12   versus Trump.

13          THE COURT:  All right.  Good morning.

14          MR. GUZY:  Good morning, Your Honor.  My name is

15   Gary Guzy from the law firm of Covington & Burlington, and

16   in case No. 17-2591, we represent Grand Staircase Escalante

17   Partners, the Society of Vertebrate Paleontology, and the

18   Conservation Lands Foundation.

19          THE COURT:  Good morning.

20          MR. GUZY:  Good morning.  Thank you.

21          MR. PHILPOTT:  Good morning, Your Honor.  I'm

22   Romney Philpott, U.S. Department of Justice, and I'm appearing

23   on behalf of all the federal defendants in all five of the

24   cases.  With me at the counsel table are Judy Coleman, who's my

25   colleague at the Department of Justice, and Aaron Moody, who is

1    with the Solicitor's Office for the Department of the Interior.

2              THE COURT:  Can you tell me the last name you said?

3    Aaron...

4              MR. PHILPOTT:  Moody.  M-O-O-D-Y.

5              THE COURT:  Okay.  Thank you.

6         Okay.  Good morning, everyone.  We're here because there

7    are currently five cases pending before this court challenging

8    two separate presidential proclamations, Proclamation 9681 and

9    9682.  Both proclamations were executed on December 4, 2017.

10        I'm not telling you anything you obviously don't know, but

11   for the record, Proclamation No. 9681 modified and reduced the

12   Bears Ears National Monument, and Proclamation 9682 modified and

13   reduced the Grand Staircase-Escalante Monument.

14        There are three plaintiffs who have filed cases involving

15   Presidential Proclamation No. 9681, and that would be the Hopi

16   Tribe versus Trump, case No. 17-CV-2590; Utah Dine Bikeyah

17   versus Trump, case No. 17-CV-2605; and Natural Resources Defense

18   Council versus Trump, which is 17-CV-2606.

19        The second group of cases involves Presidential Proclamation

20   No. 9682, and there are two cases in that.  I'm not counting the

21   FOIA case, which is not scheduled for today.  That is Wilderness

22   Society versus Trump, 17-CV-2587, and Grand Staircase Escalante

23   Partners versus Trump, 17-CV-2591.

24        There are currently two pending motions to consolidate

25   these cases.  One is pending in Hopi Tribe, 2590, and the other

is pending in the Wilderness Society, which is 2587.

The litigation involving both proclamations are both subject to motions to consolidate filed by the government that were filed on September 22.  The government argues that the two sets of cases involve common questions of law or fact.  I have sort of prepared a chart to keep all the different cases and the positions they take separate.

Now, Rule 42 of the Federal Rules provides that, if an action before the court involves a common question of law or fact, the court may: join for hearing or trial any or all matters at issue in the actions, consolidate them, or issue any other orders to avoid unnecessary cost or delay.

The government has also filed a nearly identical motion to transfer in all five cases, and that motion asks to transfer the cases to the District of Utah, arguing that there's a strong local interest in that state which outweighs the District of Columbia's tie to the claims and plaintiffs' selection of this forum.  Per the local rules, plaintiffs' responses were due tomorrow, Thursday the 1st, and I'll address that after I address the motion to consolidate.

There's also a motion to intervene pending in Utah Dine Bikeyah, which is 17-CV-2605.  Again, that motion I would rather address after I address the motion to consolidate and the transfer motion.

Plaintiffs in Grand Staircase Escalante Partners, which is

1    17-CV-2591, have also filed a motion for partial summary

2    judgment.  That judgment is obviously not yet fully briefed.

3    And again, as I mentioned, there is a related FOIA case, which

4    is Grand Staircase Escalante Partners versus the Department of

5    the Interior, 17-CV-2825, in which there are currently no

6    pending motions.  That is a different type of case that was not

7    scheduled for status today.

8        So can you tell me, given that the motion to consolidate

9    seeks to consolidate two groups of cases which involve two

10   separate proclamations, let me ask you plaintiffs who oppose the

11   motion to consolidate -- and I will take you in order of your

12   appearance this morning if that makes any sense -- to explain to

13   me why this Court shouldn't consolidate, in at least some way,

14   these cases.

15       I realize that you all represent different organizations

16   and different groups which have different interests, different

17   lawyers, different takes or arguments on the facts, certainly,

18   but for at least administrative purposes and purposes for moving

19   the case along, I'd like you to address why I shouldn't

20   consolidate or what are the reasons that you argue against

21   consolidation.  Ms. Landreth?

22             MS. LANDRETH:  Thank you, Your Honor.  The tribes in

23   Hopi Tribe versus Trump don't necessarily oppose consolidation.

24   We filed a brief response, which we called a "response" instead

25   of a "non-opposition" because we had some very careful conditions

```
 1    which I believe the Court has already identified.

 2              THE COURT:  Well, let me just stop you, and maybe it

 3    will save you some time.  Our custom -- I think it's under our

 4    local rules, but my custom and my intention would be, if I

 5    consolidated the case, the case name would be the first case

 6    filed in that consolidated case.

 7        So in the case of the Hopi Tribe, it would be the Hopi

 8    Tribe since that was the first case filed.  So to the extent

 9    you request to be listed as a named case if the cases were

10    consolidated, that would be my intention anyway.

11              MS. LANDRETH:  Thank you, Your Honor.  I'll take

12    that one.

13              THE COURT:  And also, maybe I'll just tell you what

14    I'm thinking if I were to grant the motion to consolidate, and

15    then you can tell me what problems you would have with that.

16        My inclination is to retain the independent case numbers.

17    And again, as I said, there would be one listing, which would be

18    the first plaintiff to file, which in 9681 would be the Hopi

19    Tribe, and in 9682 would be the Wilderness Society.

20        Obviously -- and I'll start with the easiest ones first.

21    Obviously, there would be separate rights of appeal.  That's not

22    -- you know, that would never be extinguished by me.

23        Individual time for oral arguments, yes.  I would be

24    inclined to allow that, but it wouldn't be probably as much time

25    as everybody wants.  But, yes, individual time for individual
```

1    oral arguments to the extent that such time is requested.

2        Presenting separate arguments, yes, clearly because, as I

3    said, you represent different plaintiffs.

4        Now, with regard to the other categories -- filing separate

5    responses, filing separate motions and separate allotments for

6    pages for briefing -- I think we would have to consider that

7    case by case, and this is why:

8        Obviously, you represent different entities.  I can't make

9    you join each others' arguments.  You may have good reasons not

10   to join each others' arguments, but I would certainly encourage,

11   to the greatest degree possible, to the extent that there are

12   arguments that you are in agreement, you would all file some

13   sort of joint pleading.

14       And, again, I think in a case like this, were I to

15   consolidate and were I to deny the motion to transfer, there

16   would be page limits.  Obviously, it would depend on the type

17   of pleading.  A motion for summary judgment as opposed to an

18   opposition to a motion to transfer, a motion to consolidate,

19   would obviously have different page limits.  But, yes.  I don't

20   have any problems with separate allotments for pages for briefing.

21       And, again, as I said, with regard to filing separate

22   motions and memoranda, that would be allowed, but certainly

23   joint filings wherever possible would be encouraged, strongly

24   encouraged, simply for the fact that if all five plaintiffs file

25   separate motions, it's going to take a lot longer for me to get

1   through everything and to give you all a ruling on those

2   motions.  So for everybody's sake, especially my clerks.

3       So that's kind of my thinking.  Status conferences,

4   scheduling oral arguments, all of those would be scheduled

5   jointly, but that's what I'm considering.

6       MS. LANDRETH:  Thank you, Your Honor.  This sounds

7   like a very acceptable approach on behalf of the plaintiff

8   tribes in Hopi Tribe versus Trump.  We would add two things for

9   the Court's consideration in a possible order to come out of

10  this conference.  One would be to suggest or directly instruct

11  us to confer before filing.  That would also be acceptable to

12  ensure we are not --

13      THE COURT:  Oh, yes.  I'm happy to do that.

14      MS. LANDRETH:  Right.  And the second would be to --

15  along those same lines, to be liberal about allowing parties to

16  incorporate by reference other parties' briefs.

17      THE COURT:  Yes.

18      MS. LANDRETH:  Some judges have not allowed me to do

19  that in the past, but if we're able to say, in order to avoid

20  duplication, we can incorporate by reference, that would allow

21  us to accordingly reduce the burden on the Court.

22      THE COURT:  Oh, that would be fine by me.  I don't

23  think I'd gain any additional information or insight by reading

24  the same argument three or four times, so I don't have any

25  problem with that.

1          MS. LANDRETH:  Certainly, Your Honor.  And that's what

2     we're hoping to avoid.  And those were our only two additional

3     requests other than, if the Court would like to hear it, we have

4     a schedule proposed.  But I can wait until the Court --

5          THE COURT:  Yes.  Let's address that separately.

6       Ms. McIntosh, did you have a position?  Oh, actually, if

7     we're going in order, I think it was Mr. Banks.

8          MR. BANKS:  Thank you, Your Honor.  James Banks for

9     the Utah Dine Bikeyah group of plaintiffs.  We would endorse

10    the outline of the way to proceed that the Court just laid out.

11    We would have no opposition to consolidation on that basis.

12         THE COURT:  All right.  Thank you.  Ms. McIntosh?

13         MS. MCINTOSH:  We also do not oppose consolidation

14    and concur with the remarks by Mr. Banks and Ms. Landreth.

15         THE COURT:  All right.  This is going well.  Just a

16    minute.  This is Wilderness Society.  Did I have someone from

17    Natural Resources Defense Council?

18         MR. FEIN:  Yes, Your Honor.  Ian Fein from Natural

19    Resources Defense Council.  Because it's a similar group of

20    plaintiffs and attorneys on the Wilderness Society and the

21    Natural Resources Defense Council cases, we have Ms. McIntosh

22    speaking on behalf of both cases for you convenience.

23         THE COURT:  Okay.  Thank you.  I just wanted to make

24    sure every plaintiff enters someone.  All right.  Thank you.

25         Now, was it Mr. Guzy next?  Yes.

1          MR. GUZY:  Thank you, Your Honor.  On behalf of Grand

2     Staircase Escalante Partners, we would have no objection to

3     consolidation of the Grand Staircase Escalante matters on the

4     grounds that the Court outlined.  Thank you.

5          THE COURT:  All right.  Thank you.  And you said,

6     Mr. Fein, that Ms. McIntosh presented your position as well,

7     right?

8          MR. FEIN:  That's right.

9          THE COURT:  So that's NRDC.  Okay.  I think that's all

10    the plaintiffs.  Okay, Mr. Philpott.  Tell me why -- all the

11    plaintiffs are in agreement, such a rare thing.  Tell me why my

12    position is going to be a problem.

13         MR. PHILPOTT:  We have no problem with your position.

14         THE COURT:  Excellent.

15       All right.  Maybe we should just stop here.

16       (Laughter)

17         THE COURT:  Great.  Then I will grant the motion to

18    consolidate orally; I will issue a minute order summarizing it.

19    The plaintiffs will retain their independent status and case

20    numbers.  The cases will be listed by the first plaintiff to

21    file, which would be for 9681, the Hopi Tribe case, and for 9682

22    will be the Wilderness Society case.

23       The parties, as a general matter, will be permitted to file

24    separate motions and memoranda but will be ordered to meet and

25    confer before filing, and to the extent possible, are permitted

1    to join in each others' arguments.

2        As far as page limits go, the local rules will control

3    unless I issue an order with regard to page limits.  So, for

4    example, on the motion to transfer, I issued a limit of 20 --

5    plaintiffs' response to defendants' motion to 20 pages, and the

6    defendants' reply shall be limited to 10 pages.  That same page

7    limit will apply to all responses to the motions to transfer.

8    But again, I encourage you, whenever possible, to join in each

9    others' arguments and/or pleadings.

10        Okay.  So that takes care of that.  And again, as I said,

11    the parties may present separate arguments, argue separately at

12    oral argument subject to time limits where they see the need for

13    it, and obviously separate rights of appeal apply.  That would

14    not be affected by my consolidation.

15        All right.  Just a minute.  Now -- oh, yes.  Government

16    responses.  Mr. Philpott, was that why you were here?

17          MR. PHILPOTT:  Yes, Your Honor.  The reply brief for

18    the transfer?

19          THE COURT:  I'm going to get to the transfer motion in

20    a second, but with regard to the consolidation, the government

21    will be permitted to reply to motions in a single brief.

22    Obviously, to the extent there are different arguments and

23    different plaintiffs, you should address those separately, but

24    you may respond in a consolidated brief.

25          MR. PHILPOTT:  Thank you, Your Honor.  And just to

1    clarify, you said "may."  So, for instance, with this briefing

2    that we're kind of midstream in, depending on how the responses

3    come in, we would also be permitted, if necessary and appropriate,

4    to file --

5                THE COURT:  One response.

6                MR. PHILPOTT:  Just one.

7                THE COURT:  Well, there are two consolidated cases.

8    So there's 9681 and 9682.  You can file a single response in

9    each one.

10               MR. PHILPOTT:  Fair enough.

11               THE COURT:  And I'm about to extend that schedule.

12               MR. PHILPOTT:  Fair enough.  And I guess one point

13   I would -- just in case, we may ask for -- since we may be

14   responding to more arguments, we might ask for more than 10 pages.

15               THE COURT:  Yes.  And let me just say, as far as any

16   motion other than a dispositive motion, I require, as I said, as

17   the local rules require, I require you to say in your caption

18   whether the motion is opposed or unopposed.

19       If it's unopposed, you will get a very, very quick response.

20   If it's opposed, I am going to be waiting for an opposition, and

21   therefore things will get delayed.  And it's very frustrating

22   for me to get a motion, especially ministerial motions such as

23   motions for extension of time and page limits, for it not to

24   indicate whether it's opposed, and then I have to ask the

25   parties in an e-mail or something if it's opposed and when are

1    they going to give me their opposition.  So please let me know

2    in the caption whether the motion is opposed or unopposed.

3    I can usually resolve unopposed motions very quickly.

4         And I will tell you that I'm pretty lenient with motions

5    for extension of time or motions for more pages, although I look

6    a little closer at those.  The first -- you know, initially.  I

7    just had a case where there is a fifth extension, and I really

8    -- you know, everybody is busy and everybody has a personal life,

9    but that's when I lose my patience, after the initial number.

10        But generally, I'm pretty good about that.  I just ask

11   you to confer with your colleagues, and especially in a case

12   involving this number of plaintiffs, if you can give me a

13   proposed day, proposed amount of time you all agree on, it will

14   make moving this case along very much easier.

15             MR. PHILPOTT:  Thank you, Your Honor.

16             THE COURT:  All right.  So while you're up here,

17   Mr. Philpott, on the motion to transfer, per the local rules,

18   the plaintiffs were supposed to file responses to the motion to

19   transfer by tomorrow.  Obviously, that's not doable.  Are you --

20   and you've already filed a motion to transfer in all cases.  I

21   will allow you -- how many pages do you think you're going to

22   need to reply?

23             MR. PHILPOTT:  Your Honor, that's difficult to say.

24             THE COURT:  All right.  Why don't you figure out how

25   many you need and then file something for an extension.

1          MR. PHILPOTT:  Fair enough.  I think it will depend

2     on what the response briefs look like.  I mean, if we wanted to

3     just say 20 now, and hopefully we'd come in well under 20, but

4     that way we wouldn't have to come and bother you.

5          THE COURT:  Okay.  Well, since you're responding to --

6     Okay.  Let's go with 20.  So first, plaintiffs' response.

7          Plaintiffs, how much time do you need to file a motion to

8     the response for the motion to transfer, if you're going to

9     oppose it at all?

10          MS. LANDRETH:  We don't need any extra time, Your

11     Honor, and I'm looking at counsel table.  We intend and are

12     prepared to file our opposition to the motion tomorrow.

13          THE COURT:  So you are opposing it.  All right.

14          MS. LANDRETH:  Yes.

15          THE COURT:  Okay.  If you don't need any extra time,

16     then great.

17          MS. LANDRETH:  I'm just looking for nodding heads,

18     for the record.

19          THE COURT:  If you do need extra time, speak now.

20          All right.  Mr. Philpott, in that event, do you need extra

21     time under the local rules?

22          MR. PHILPOTT:  Your Honor, we may.  Again, it's going

23     to depend on what they --

24          THE COURT:  Then file a motion in due course to let me

25     know if you need the extra time.

1          MR. PHILPOTT:  We will absolutely do that.

2          THE COURT:  I'll extend your response to 20 pages.

3          MR. PHILPOTT:  All right.  Thank you.

4          THE COURT:  Plaintiffs, do you need more than -- no.

5   You don't need more than 20 pages.  All right.  Well, now that

6   I've consolidated, again, I encourage you to consider whether

7   you can join in each others' arguments or motions, but I'm not

8   going to require it.  Okay.  That's the motion to transfer.

9       The motion to intervene.  There is a motion to intervene,

10  which is ECF No. 17 pending in Utah Dine Bikeyah, which is

11  17-CV-2605.  I kind of feel like -- unless there's some urgency,

12  and Mr. Banks should let me know, I kind of think that that

13  should wait till the motion to transfer has been resolved.  But

14  if you disagree, tell me, or if you agree, let me know.

15      What is your position on that?

16          MR. BANKS:  We have no preference, Your Honor.

17          THE COURT:  All right.  It's not your motion, so --

18  well, I think I'm going to wait.  If I'm not going to be the

19  judge handling it, I think that judge should make that decision.

20  So I'll hold that one off.

21      All right.  And the motion for partial summary judgment.

22  Mr. Guzy, you filed a motion for partial summary judgment.  It's

23  not fully briefed, so obviously we'll just take that -- and I'm

24  not going to expect briefing to be -- now, do the deadlines on

25  that motion conflict with our motion to transfer?  I can't

1    remember.  When was that filed?

2              MR. GUZY:  Your Honor, that was filed about a week and

3    a half ago.  I can get you the precise date, but you had stayed

4    the briefing on --

5              THE COURT:  I'm just going to continue to stay it

6    until we resolve the motion to transfer.

7              MR. GUZY:  And, Your Honor, just if I may just for one

8    second --

9              THE COURT:  Yes.

10             MR. GUZY:  -- on the rationale for filing that motion

11   at this point in time --

12             THE COURT:  I was curious.

13             MR. GUZY:  -- the broader context for this matter,

14   which is that the Proclamation 9682 has certain provisions which

15   took effect immediately that could have an impact on the

16   property and other provisions which take effect on February 2

17   that have the potential for significant harm to the historic and

18   scientific resources that were protected in the original

19   proclamation.

20        In addition, our view is that these matters are ones that

21   are straightforward legal matters -- facial, constitutional,

22   and statutory issues -- that are ripe for resolution now.

23             THE COURT:  You did not file a request for equitable

24   relief.  Is there irreparable harm that's in danger?  You can

25   see the problem is that I'm reluctant to start deciding

1    substantive issues in this case if I'm not going to be the judge

2    who handles this case, and I assume by the fact that you didn't

3    file an injunctive motion that there's not an issue of

4    irreparable harm here.

5            MR. GUZY:  Well, Your Honor, I appreciate that

6    question, and the candid answer is we don't know precisely

7    how this will be implemented on the ground.  We had asked the

8    government, as part of their request for an extension of time,

9    to stay implementation on the ground for the period of that

10   extension of time to answer.  They did not agree to that, and

11   hence that was the basis for our opposition.

12       I would just note that it's a significant area, and there's

13   opportunities for all sorts of things to happen out there.  And

14   one way to handle it might be to ask the government to provide

15   notice in the event that they intend to engage in any

16   implementation activities, or are aware of any private

17   activities that are implementing the proclamation as well, to

18   provide the Court and the parties an opportunity to assess

19   whether there's irreparable harm or not.

20           THE COURT:  Well, Mr. Guzy, I could tell you that I am

21   in no way inviting a motion for injunctive relief.  I have been

22   the lucky recipient of an enormous number of those in the last

23   two months, and I certainly don't need any more.

24       Mr. Philpott, can you give me the government's response to

25   at least the last request, which is a request for notice if the

1   government intends to take some action that might result in

2   irreparable changes?

3       MR. PHILPOTT:  Well, I will do my best, Your Honor.

4   First of all, so Mr. Guzy is right that one of the parts of

5   this proclamation is that it took certain lands that had been

6   formerly withdrawn from mineral development.  Those were off

7   limit to mineral development, and the proclamation changed that.

8   So some of these lands, to the extent they're not otherwise

9   protected -- for instance, there is a wilderness area, but --

10      THE COURT:  So I guess what Mr. Guzy is asking for

11  is if there are going to be bulldozers rolling in tomorrow, he

12  wants to know about that.

13      MR. PHILPOTT:  Right.  Ans so one of the things I

14  would note is that just because these lands are no longer off

15  limit doesn't mean that there won't need to be additional

16  federal approvals for things to happen.

17      THE COURT:  Yeah.  I mean, as I'm recalling just

18  from what comes before me, there usually is like a request for

19  proposals and notice and comment and public -- I mean, do you

20  all still do that?

21      MR. PHILPOTT:  Correct.  So, for instance, if someone

22  wanted to do, you know, some oil and gas development, they'd

23  have to get a lease.

24      THE COURT:  Right.

25      MR. PHILPOTT:  And that activity -- it's a very public

1    process that involves, you know, various statutory authorities

2    that require various processes.  So, as a general rule, you

3    know, the government -- it's going to be fully known if something

4    major is happening out there.

5                THE COURT:  All right.  Given your representations,

6    I don't think at this point -- yes, Mr. Guzy.

7                MR. GUZY:  May I respond?

8                THE COURT:  Yes.  You may respond.

9                MR. GUZY:  Thank you.  Your Honor, we believe there

10   are four provisions in Proclamation 9682 that are worth noting

11   and raise potential concerns.

12        One is the position that has been taken to allow for the

13   entry location, selection, sale, or other disposition under

14   public-lands laws of former monument areas and their disposition

15   under all the laws relating to mineral and geothermal leasing

16   and allow for location entry and patent under the mining laws.

17        Now, some of those may in fact be carried out through

18   notice, but exploration activities by private parties and the

19   filing of patent claims under the mining laws may occur without

20   any notice and may indeed result in significant damage to

21   historic and scientific resources.

22        In addition, there are three other provisions that seem

23   to take immediate effect under the proclamation.  One is the

24   allowance of motorized and non-mechanized vehicle use on roads

25   that formerly was prohibited.  That could also allow for off-

1    road vehicle access, which could be very damaging to resources.

2    There's an allowance for enhanced grazing activities and

3    allowance for ecological restoration that's designed to enhance

4    grazing.

5        So some of the actions, absolutely, there would be a need

6    for further government planning and process if they appropriately

7    follow the applicable laws in implementing this, but others seem

8    to be authorized immediately or on February 2 and may have the

9    potential for very significant harm here.

10            THE COURT:  I appreciate that.  But the number and the

11    range of potential -- for example, I don't know if I can ask --

12    at this point, I'm not inclined to order the government to

13    provide notice only because that -- I mean, I take

14    Mr. Philpott's argument that that sort of activity would be

15    known, and, you know, if somebody starts grazing their cattle,

16    that's something that's going to be pretty apparent.  So at this

17    point, I'm not going to order notice to be provided.

18        Obviously, if something is about to happen that is drastic

19    and would forever change the character or, you know, have some

20    irreparable effect on the land or the area included in the

21    monument, then the parties can request the appropriate relief.

22    But at this time, I'm not going to require the government to

23    provide notice.

24        I will try and resolve the transfer motion as quickly as

25    possible, especially since you all aren't asking for additional

1    time, and then we can move on to -- perhaps briefing on your

2    motion for partial summary judgment can be addressed.

3              MR. GUZY:  Thank you, Your Honor.  We appreciate it.

4              THE COURT:  So I guess, technically, it's stayed.

5    What I will do is, once I rule on the transfer motion, I will

6    then issue a briefing schedule on that motion for partial

7    summary judgment.

8              MR. GUZY:  Thank you, Your Honor.  We appreciate that.

9              THE COURT:  Thank you.

10        All right.  Is there anything else that the parties would

11   like me to address or want to bring to my attention today?

12   Ms. Landreth?

13             MS. LANDRETH:  Thank you, Your Honor.  Just briefly,

14   we would -- and again, I'm sorry I'm standing at an awkward

15   position to make sure people are in agreement.

16             THE COURT:  That's fine.

17             MS. LANDRETH:  We would like to suggest, as a

18   prophylactic measure, the possible setting of a briefing

19   schedule for the motion for summary judgment, including hearing

20   dates, as we are all gathered here today and all have our

21   calendars and it would obviate the need to then confer and

22   reschedule.  Obviously, it disappears should the Court decide to

23   transfer, but if we have a schedule while we're all here, it

24   seems like it would be very convenient for everyone, including

25   the Court.

1          THE COURT:  Mr. Philpott, do you have any objection

2     to that?

3          MR. PHILPOTT:  I apologize.  I was consulting with

4     people smarter than I.

5          THE COURT:  I do that all the time.

6          MR. PHILPOTT:  So was the proposal that --

7          THE COURT:  So the proposal is that we simply set a

8     briefing schedule and date for oral argument on the motion for

9     partial summary judgment, because everyone's here with their

10    calendars, with the understanding that if I grant the

11    government's motion to transfer, that schedule is obviously

12    vacated because a new judge would be --

13         MR. PHILPOTT:  Well, I guess the wrinkle I'd throw

14    into it, you know, our answer -- or response deadline rather --

15    is March 16th.

16         THE COURT:  That's why we'd be setting a different

17    schedule given all the other things that you have to do.  In

18    other words, if I set a briefing schedule and oral argument date

19    for the motion for partial summary judgment, I'll obviously take

20    your request for whatever time you need into account.

21         MR. PHILPOTT:  Do you mind if I confer?

22         THE COURT:  Not at all.  Meanwhile, I hope you all

23    have proposed dates and so on amongst yourselves?

24         (Plaintiffs indicate.)

25         THE COURT:  Okay.

1          (Government counsel conferring.)

2          MR. PHILPOTT:  So just so I'm clear, and I don't think

3    I was, our deadline to respond to the complaint is March 16th.

4    We're going to be filing motions to dismiss on that.  Just in

5    terms of --

6          THE COURT:  Well, wait.  Not yet.  We need to deal

7    with the transfer motion.  If you're going to file a motion to

8    dismiss and I decide to transfer this case, it wouldn't be me;

9    it's going to be another judge setting that briefing schedule.

10         MR. PHILPOTT:  That is correct.

11         THE COURT:  But continue.

12         MR. PHILPOTT:  So, you know, we hope and we think you

13   should grant that transfer motion.  We, of course, are prepared

14   for the eventuality that you don't, and you'd provide us an

15   extended deadline to March 16 to respond to the complaint.

16   So if this case were to stay within this court, then we would

17   proceed with briefing it.

18         THE COURT:  Briefing what?  The motion --

19         MR. PHILPOTT:  Our motion to dismiss for all the claims.

20         THE COURT:  Well, why couldn't you address the motion

21   for partial summary judgment before the motion to dismiss?

22         MR. PHILPOTT:  We could.  In the -- you know, I think

23   it makes sense, just in terms of the way cases normally proceed,

24   then you have the motion to dismiss proceedings.

25         THE COURT:  Well, normally I think so, but given that

1    there appears to be a little bit of -- not a little bit, but

2    some urgency with regard to the subject matter of the partial

3    motion, it's not a complete motion for summary judgment.  It's

4    certainly -- I don't -- tell me how you're prejudiced by

5    addressing that before a motion to dismiss.

6        I mean, it seems like you stand a better shot on the partial

7    summary judgment given the higher standard of review that I have

8    to give a motion for partial summary judgment.  How are you

9    prejudiced by having that be considered before a motion to

10   dismiss?

11       MR. PHILPOTT:  You know, offhand, I don't know.

12   I mean, I guess I'll just make clear that, to the extent that

13   you order us to respond to that motion for partial summary

14   judgment, we will still be filing motions to dismiss.

15       THE COURT:  Okay.  Well, again, this is all contingent

16   on what I do with the motion to transfer.  I'm going to go ahead

17   and set a prophylactic, as Ms. Landreth said, briefing schedule

18   for motion for partial summary judgment.  I'm not going to set a

19   date for a oral argument.

20       Mr. Guzy, is that just for your plaintiff, or is that a

21   motion for partial summary judgment -- is that -- in other

22   words, now that I've consolidated the cases, are the other --

23   I'm trying to keep everybody straight.  Your other plaintiffs,

24   are they going to join in that?

25       MR. GUZY:  Your Honor, we will take your instruction

1  to confer and, to the maximum extent possible, coordinate and

2  consolidate briefing on it.

3         THE COURT:  Okay.  I'm not going to set an oral

4  argument date for that, because if I do feel that oral argument

5  would be helpful and the parties are requesting it, we can just

6  do that by contacting the parties.  But I will set a prophylactic

7  briefing schedule in the event that I deny the government's

8  motion to transfer.

9      And I can see already where this is going to, you know,

10 motions to dismiss coming in after motions for summary judgment.

11 This is not generally how I like to proceed, but given your

12 representation as to the urgency of the subject matter of that

13 motion, I'll set a briefing schedule.

14     So you filed the motion.  Are you going to ask for

15 additional time to meet and confer with your coplaintiff to

16 see if they want to join in it?

17        MR. GUZY:  Yes.  And certainly that can happen during

18 the pendency of the stay as you're considering the motion to

19 transfer, and then at some point, if the other parties want to

20 file either companion motions for partial summary judgment or

21 supporting briefs, I think --

22        THE COURT:  You know what, I'm changing my mind.

23 Since I'm not having oral argument at this point, I'm not going

24 to issue a briefing schedule because you all -- that doesn't

25 require your presence here.  So I'm going to stick to my

1   original plan, which is I'm going to try to rule on a motion to

2   transfer expeditiously.

3       Once I issue an order on that motion, I will at the same

4   time, if I deny the motion, order a briefing schedule on the

5   motion for partial summary judgment, and the government can file

6   a motion to dismiss whenever they're ready to file their motion

7   to dismiss.  But I'm not going to set a schedule on that right

8   now.

9           MR. GUZY:  Thank you, Your Honor.

10          THE COURT:  Ms. McIntosh.

11          MS. MCINTOSH:  Thank you, Your Honor.  If I could just

12  address that?  So the plaintiffs' counsel in these two cases

13  recognize that we have some common threshold issues about the

14  scope of the president's authority.

15          THE COURT:  Yes.  It's certainly a threshold issue.

16          MS. MCINTOSH:  Yes, exactly.  So we've been talking

17  about how to present that issue to the Court in a way that's not

18  only orderly but an expeditious resolution of the issue, and I

19  wanted to propose -- at least provide the Court with some

20  insight about our thinking about how that might happen.

21      We have been conferring about the possibility of, for

22  example, responding to the defendants' motion to dismiss, which

23  it will file presumably on March 16th unless it's extended, with

24  a motion for summary judgment, and then the briefing would

25  follow after that so that the Department of Justice would file

1   its reply to the motion for --

2          THE COURT:  So as a -- wait.  So you're suggesting

3   that instead of -- because one thing I do not like is

4   simultaneous cross-motions.  I like sequential cross-motions,

5   just letting you know.  That's a pet peeve of mine.

6       So are you saying that if the government -- just say, for

7   the purposes of discussion, that the government filed its motion

8   to dismiss on March 16th, that instead of an opposition, you

9   would file -- you'd still have to file -- instead of an

10  opposition, you'd file a motion for summary judgment, or you'd

11  file an opposition and motion for summary judgment?

12         MS. MCINTOSH:  Exactly.  And then the briefing would

13  continue in a staggered fashion.  That way we would reduce the

14  number of briefs that would be filed if there were actual

15  cross-motions.

16      We talked about a proposed schedule that would have us

17  filing our opposition to the motion to dismiss and cross-motion

18  for partial summary judgment by April 6, so that would be 21

19  days after the motion to dismiss.  Then we would propose the

20  defendants file their combined reply in support of its motion to

21  dismiss plus our opposition to the motion for summary judgment

22  by April 27.  So that would be 21 days after, and then we would

23  have a reply in support of our motion for summary judgment by

24  May 11.  Now, that just gives the Court a sense of how that may

25  roll out.  We think that it addresses the need for expeditious

1    review but also an orderly, scheduled way to look at the issues.

2              THE COURT:  Mr. Philpott?  I'm not going to issue any

3    order today, but is that something...

4              MR. PHILPOTT:  I've certainly never seen anything

5    mixing motions for summary judgment and motions to dismiss.

6              THE COURT:  Well, I guess there's no discovery, or

7    nobody wants discovery.

8              MR. PHILPOTT:  That's right.  I mean -- I think maybe

9    what I would propose is that we go forward as you suggested.

10   You're going to address the motion for transfer, and then if

11   you deny that, then you order the parties to get together and

12   try to --

13             THE COURT:  That's kind of what I'm thinking.  Or you

14   can start meeting and conferring on that now.  I'm hoping to get

15   to the motion to transfer, but I can tell you that I have so

16   many motions for emergency relief in front of me and -- anyway.

17   I'm not playing for sympathy here, but I'm just trying to explain

18   to you that my plate is a little full right now.  But I am

19   hoping to get to your motion to transfer very quickly, because

20   it's obviously what's holding everything up.

21        So maybe you could start to meet and confer on that, because

22   a briefing schedule on dispositive motions seems to be something

23   that you're going to have to propose either to me or to one of

24   the excellent judges they have in Utah.  There doesn't seem to

25   be any harm in getting started on meeting and conferring on

1    that.  I'm not going to issue any kind of briefing schedule

2    today, but I suggest that you be prepared to have a proposed

3    briefing schedule in short order once the motion to transfer

4    is ruled on.  And I don't have any strong feelings with the

5    procedure that Ms. McIntosh has proposed.  It is a little

6    unusual, but it's a slightly unusual case anyway.

7            MR. PHILPOTT:  Thank you, Your Honor.

8            THE COURT:  All right.  Thank you.

9        Anything further from the parties?  No?  All right.

10   Thank you all, and I will issue a ruling as soon as I can.

11       (Proceedings adjourned at 11:53 a.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE